IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LAKEISHA PARKER,** | * | |
| *Plaintiff*, | * | |
| v. | * | **Case No. 1:23-cv-01628-JRR** (Consolidated with 1:23-cv-01966-JRR) |
| **CHRIS CARTWRIGHT,** *et al.*, | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Pending before the court is Defendant Brian Cassin's Motion to Dismiss.[1] (ECF No. 6; "the Motion.") The court also has before it Defendant Chris Cartwright's Notice of Joinder in the Motion. (ECF No. 15.) The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

**I.   BACKGROUND**[2]

*Pro Se* Plaintiff Lakeisha Parker filed two separate complaints ("Complaint I" and "Complaint II" – *see* n.2, *supra*) in the District Court of Maryland for Baltimore City alleging violations of the Fair Credit Reporting Act ("FCRA"). On June 16, 2023, Defendant Cartwright in Complaint I removed the case to this court and the complaint was docketed at ECF No. 3 in civil case number 1:23-cv-01628-JRR. On July 21, 2023, Defendant Cassin in Complaint II removed the case to this court and the complaint was docketed at ECF No. 3 in civil case number

---

[1] As explained below, this is a consolidated case. The lead case is 1:23-cv-01628-JRR, which was consolidated with 1:23-cv-01966-JRR. The Motion at ECF No. 6 was filed in 1:23-cv-01966-JRR prior to the consolidation.
[2] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint. (ECF No. 3.) The court notes that the Complaint filed in 1:23-cv-01628-JRR ("Complaint I") and the Complaint filed in 1:23-cv-01966-JRR ("Complaint II") contain the same factual allegations. The only difference is the named Defendants – Complaint I is brought against Defendant Cartwright, the CEO of Trans Union; and Complaint II is brought against Defendant Cassin, CEO of Experian PLC. The facts outlined here are taken from the Complaint filed at ECF No. 3 in 1:22-cv-01628-JRR.

1:23-cv-01966-JRR. On August 9, 2023, the court consolidated the cases and designated 1:23-cv-01628-JRR as the lead case. (ECF No. 14; *see also* n.1, *supra*.)

The factual allegations contained in Complaint I and II are identical. Plaintiff alleges that Defendants violated the FCRA by improperly reporting her credit and refusing to fix it. (ECF No. 3.) Plaintiff alleges that Defendants' FCRA violations have caused her to be denied credit and "have caused undue stress for excessive high interest rates offer." *Id.*

On July 28, 2023, Cassin filed the Motion. (ECF No. 6.) Cassin moves to dismiss on several grounds: (1) insufficient service of process; (2) lack of personal jurisdiction; and (3) failure to state a claim upon which relief can be granted. (ECF No. 6-1 at p. 3–12.) On August 24, 2023, Cartwright filed a Notice of Joinder in the Motion. (ECF No. 15.)

## II.     LEGAL STANDARDS

**Federal Rule of Civil Procedure 12(b)(5)**

"A motion to dismiss for insufficient service of process is permitted by Federal Rule 12(b)(5)." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Id.* "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Id.* (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir.1963) and *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984)).

**Federal Rule of Civil Procedure 12(b)(2)**

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for

jurisdiction by a preponderance of the evidence.'" *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* "[I]f a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an 'evidentiary hearing'" or, at the very least, "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments, using procedures that provide the parties with a fair opportunity to present to the court the relevant facts[.]" *Id.* (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005)); *Sec. and Exch. Comm'n v. Receiver for Rex Ventures Group, LLC*, 730 F. App'x 133, 136 (4th Cir. 2018) (internal citations and quotation marks omitted).

The parties have not engaged in full discovery. Accordingly, Plaintiff need only make a *prima facie* showing of personal jurisdiction. "In deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). "In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

3

**Federal Rule of Civil Procedure 12(b)(6)[3]**

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist.

---

[3] As discussed in more detail below, Cartwright filed a Notice of Joinder in the Motion arguing that, pursuant to Federal Rule of Civil Procedure 12(c), Complaint I is subject to dismissal because Plaintiff fails to adequately plead facts to support that Cartwright is liable under the FCRA.  (ECF No. 15.)

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, as long as it is made early enough so as not to delay trial.  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)."  *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)).

4

LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.   ANALYSIS

As an initial matter, the court is mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.* (citations omitted).

### A.   Rule 12(b)(5) – Service of Process

"Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant." *Federal Deposit Insurance Corp. v. Schaffer*, 731 F.2d 1134, 1135–1136 (4th Cir. 1984). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016) (citing *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)). However, "[w]hen the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Where "the first service of process is ineffective, a motion to dismiss should not be granted but rather the [c]ourt should treat the motion in the alternative, as one to quash the service of process[.]" *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (quoting *Bailey v. Boilermakers Local 667 of Int'l Bhd. of Boilermakers*, 480 F. Supp. 274, 278 (N.D.W. Va. 1979)).

5

Cassin asserts that Complaint II should be dismissed because Plaintiff failed to effect proper service of process. (ECF No. 6-1 at 3–5.) Specifically, Cassin asserts that Plaintiff incorrectly identified him in Complaint II as the "CEO of Experian" located in Allen, Texas, which is an address affiliated with Experian Information Solutions ("EIS"). (ECF No. 6-1 at 2 n.1.) Cassin asserts that he serves as the CEO for Experian, PLC, which is headquartered in Dublin, Ireland. *Id.* Therefore, Cassin argues, he must be served as an individual outside the United States, in accordance with Rule 4(f), not via certified mail directed to an entity at which Cassin "does not hold a position." (*Id.* at 4.)

In the instant case, Cassin received actual notice, as demonstrated by his filings in this case. While Plaintiff may not ignore the rules for properly effecting service of process, in light of Plaintiff's *pro se* status and in the interest of justice, the court declines to dismiss Complaint II against Cassin on this basis. *See Armco and Vorhees, supra.*

### B. Rule 12(b)(2) – Personal Jurisdiction

Cassin argues that, even if Plaintiff properly served him, Complaint II is also subject to dismissal because the court lacks personal jurisdiction over him. (ECF No. 6-1 at 5.)

"The requirement that the court have personal jurisdiction . . . springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "Because the personal jurisdiction requirement 'recognizes and protects an individual liberty interest, . . . the requirement may be waived by a defendant's 'express or implied consent to the personal jurisdiction of the court.'" *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703). "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts

with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)) (citations omitted). The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction, which the court addresses in more detail below. *Id.*

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). Cassin argues, and Plaintiff does not dispute, that he is a non-resident defendant. (ECF No. 6-1 at 6.) In order for the court to assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs. Inc.*, 84 F.3d 132, 134 (4th Cir. 1994)).

### 1. State Long-Arm Statute

As set out above, it is well settled in the Fourth Circuit that in order for this court to exercise personal jurisdiction over a non-resident defendant, two conditions must be satisfied. "First the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with the Fourteenth Amendment due process requirements." *Nolan*, 259 F.3d at 215. "The Maryland long-arm statute . . . limits specific jurisdiction to cases where the cause of action arises from any act enumerated in the statute itself. Thus, a plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction." *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.*, 374

F. Supp. 2d. 465, 472 (D. Md. 2005) (citation omitted); *see also Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001) (noting that "[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction . . . ."). This requirement can be met through a complaint or in opposition to a 12(b)(2) motion. *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 597 (D. Md. 2014).

Maryland's long-arm statute provides:

> **(a)** If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> **(b)** A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > **(1)** Transacts any business or performs any character of work or service in the State;
> >
> > **(2)** Contracts to supply goods, food, services, or manufactured products in the State;
> >
> > **(3)** Causes tortious injury in the State by an act or omission in the State;
> >
> > **(4)** Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> >
> > **(5)** Has an interest in, uses, or possesses real property in the State; or
> >
> > **(6)** Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(a) and (b).

Complaint II does not identify any provision of the Maryland long-arm statute authorizing this court to exercise personal jurisdiction over Cassin and Plaintiff did not respond to the Motion. The court declines to act on behalf of Plaintiff and opine which, if any, statutory provision supports the exercise of personal jurisdiction over Cassin. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (holding that "[i]n our adversarial system of adjudication, we follow the principle of party presentation"); *see also Greenlaw v. U.S.*, 554 U.S. 237, 243 (2008) (holding that "in . . . civil . . . cases, in the first instance and on appeal . . ., we rely on the parties to frame the issue for decision and assign the court the role of a neutral arbiter of matter the parties present").

### 2.     *Due Process Clause of the Fourteenth Amendment*

Even had Plaintiff identified a provision of the Maryland long-arm statute that purportedly allows this court to exercise jurisdiction over Cassin, the allegations in Complaint II do not suggest that Cassin is subject to specific or general jurisdiction in this forum.

"A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A., v. Brown,* 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). Specific jurisdiction depends on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

9

The Fourth Circuit applies a three-part test to determine whether a defendant has sufficient minimum contacts with the forum state: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"[4] *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

---

[4] "The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp.*, 561 F.3d at 278. Courts have considered various "nonexclusive factors" applicable in a business context to "resolve whether a defendant has engaged in such purposeful availment" including, but not limited to:

> • whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957);
>
> • whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);
>
> • whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221, 78 S. Ct. 199; *Burger King*, 471 U.S. at 475-76, 105 S. Ct. 2174;
>
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475-76, 481, 105 S. Ct. 2174;
>
> • whether the parties contractually agreed that the law of the forum state would govern disputes, *see Burger King*, 471 U.S. at 481-82, 105 S. Ct. 2174;
>
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir.1985);
>
> • the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith*, 901 F.2d at 39; and
>
> • whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

*Consulting Eng'rs Corp.*, 561 F.3d at 278.

Construing Complaint II in the light most favorable to Plaintiff, no allegations suggest that Cassin had any "sort of extensive and systematic contacts necessary for an exercise of general jurisdiction." *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 607 (D. Md. 2008). As to specific jurisdiction, no allegations suggest that Cassin purposefully availed himself of the privilege of conducting activities within Maryland. There is no allegation that Cassin maintains an office or agents in Maryland, owns property in Maryland, solicited or initiated business in Maryland, or deliberately engaged in significant or long-term business activities in Maryland. Further, Plaintiff does not allege the existence of a contract providing that Maryland law would govern disputes or that Cassin made in-person contact with Plaintiff in Maryland. *See Consulting Engineers Corp.*, *supra*.

In sum, none of Plaintiff's allegations suggests that Cassin's alleged actions of which Plaintiff complains were directed at Maryland. *Aphena Pharma Solutions-Md. LLC*, 912 F. Supp. 2d at 317. Plaintiff fails to satisfy the first prong of the test for specific jurisdiction; and the court declines to consider prongs two and three. *See Consulting Engineers Corp.*, 561 F.3d at 278 (explaining that "[i]f, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three"). Accordingly, the Motion will be granted as to all claims against Cassin. Because the court finds that it lacks personal jurisdiction over Cassin, the court will not address Cassin's alternative Rule 12(b)(6) arguments.

C.      **Rule 12(c) – Judgment on the Pleadings**

As noted above, Cartwright filed a Notice of Joinder in the Motion arguing that, pursuant to Federal Rule of Civil Procedure 12(c), Complaint I is subject to dismissal because Plaintiff fails to plead facts that, even if true, would support his liability under the FCRA. (ECF No. 15.)

A party may move for judgment on the pleadings after the pleadings are closed, as long as it is made early enough so as not to delay trial. FED. R. CIV. P. 12(c).[5] "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)." *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)). Therefore, "[t]he factual allegations of the complaint, assumed to be true, 'must be enough to raise a right to relief above the speculative level[.]'" *Lyons v. PNC Bank, N.A.*, 618 F. Supp. 3d 238, 241 (D. Md. 2022) (quoting *Twombly*, 550 U.S. at 555)).

The FRCA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). Pursuant to Section 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A credit reporting agency is defined as any "person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). A "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b).

---

[5] Because Cartwright filed an Answer, Cartwright closed the pleadings; because no trial date has been set, a 12(c) motion will not delay trial. *Lyons v. PNC Bank, N.A.*, 618 F. Supp. 3d 238, 242 (D. Md. 2022).

Cartwright argues that Plaintiff's FCRA claim fails because Cartwright is not a consumer reporting agency ("CRA"). (ECF No. 15 at 2.) Cartwright further argues that he cannot be liable because "the FCRA does not apply to a consumer reporting agency's officers, directors, or employees, but only to the consumer credit reporting agencies themselves." *Id.*

The court finds *Estrada v. Equifax Information Services LLC* persuasive. No. CV-21-01704-PHX-SMB, 2022 WL 2705835 (D. Ariz. July 12, 2022). There, the court analyzed whether the CEO defendants could be held liable under the FCRA:

> Generally, "individual defendants cannot be held liable solely because they are chief executive officers for the corporate defendants." *McNack v. Smith*, No. 2:14-cv-04810-CAS(SPx), 2015 WL 7302218, at *5 (C.D. Cal. Nov. 16, 2015) (quoting *Sloan v. TransUnion, LLC*, 2010 WL 1949621, at *2 (E.D. Mich. Apr. 22, 2010)). "Instead, [c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct . . . or the central figure in the challenged corporate activity." *Id.* (quoting *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 532 n. 10 (9th Cir. 1989)) (internal quotation marks omitted).
>
> Here, the CEO Defendants are not CRAs for the purposes of the FCRA but are merely officers of the CRAs themselves. The FAC contains no allegations which would allow the Court to find that the CEOs are themselves CRAs. Furthermore, the allegations in the FAC do not allege that the CEOs took actions individually which led to the CRA violations. Instead, the allegations merely conflate the CEOs with the CRAs themselves. This is insufficient for the Court to find liability on behalf the CEO Defendants individually. Additionally, no allegations in the FAC allege that CEOs were the "guiding spirits" behind the conduct that allegedly caused the FCRA violations.
>
> Accordingly, Plaintiff has not alleged sufficient facts to hold the CEO Defendants liable under the FCRA. The Court's conclusion is in accord with other decisions to examine that have examined the issue. *See, e.g., Bath v. Boundy*, No. 18-CV-00384-RBJ-STV, 2018 WL 3382934, at *3 (D. Colo. June 12, 2018), *report and recommendation adopted*, No. 18-CV-00384-RBJ, 2018 WL 4368677 (D. Colo. Aug. 6, 2018) (dismissing FCRA claim against Mr. Boundy where it was unclear whether plaintiff was alleging that

> Mr. Boundy personally engaged in the activities alleged or whether the corporate entity took the actions). Thus, the Court will grant Defendants' Motion to Dismiss under Rule 12(b)(6).

*Id.* at *4-5.

It is unclear from Complaint I whether Plaintiff alleges that Cartwright violated the FCRA in his individual capacity or as an officer of Trans Union. Regardless, nothing in Complaint I suggests that Cartwright took any action in his personal capacity or that Cartwright is a CRA (*see Estrada, supra*); and even construing Complaint I to assert a claim pursuant to 15 U.S.C. § 1681s-2(b), Plaintiff's claim fails.

"A consumer who disputes the accuracy of information in a credit report 'may have a private right of action against the furnisher of the inaccurate information if the furnisher fails to properly investigate a dispute.'" *Tisdale v. CASA Partner V.L.P. The Park at Winterset*, 2019 WL 13250978, at *2 (D. Md. Sept. 6, 2019) (quoting *Jackson v. Convergent Outsourcing, Inc.*, No. RDB-13-1755, 2014 WL 722116, at *2 (D. Md. Feb. 25, 2014)). In *Saunders v. Branch Banking And Trust Co. of Va.*, the Fourth Circuit succinctly explained:

> If a consumer notifies a [Credit Reporting Agency ("CRA")] that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. § 1681i(a)(2). Upon receipt of this notice, a furnisher must:
>
> > (A) conduct an investigation with respect to the disputed information;
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> > (C) report the results of the investigation to the consumer reporting agency; [and]
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .
>
> § 1681s–2(b)(1).

> Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "incomplete or inaccurate." § 1681s–2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.

526 F.3d 142, 148 (4th Cir. 2008) (internal citations omitted).

"To state a claim under that section of the FCRA, the plaintiff must plead that: (1) the plaintiff 'notified the consumer reporting agency of the disputed information'; (2) 'the consumer reporting agency notified the defendant furnisher of the dispute'; and (3) 'the furnisher then failed to [reasonably] investigate and modify the inaccurate information.'" *Id.* (quoting *Alston v. Wells Fargo Bank, N.A.*, No. 8:12-CV-03671-AW, 2013 WL 990416, at *4 (D. Md. 2013)). Plaintiff fails to allege any of the required elements to state a claim under § 1681s-2(b).

Accordingly, Complaint I will be dismissed as against Cartwright.

### IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 6) will be granted. Complaint II in Case No. 1:23-cv-01966-JRR will be dismissed as against Defendant Cassin. Complaint I in Case No. 1:23-cv-01628-JRR will be dismissed as against Defendant Cartwright.

/S/
_____
Julie R. Rubin
United States District Judge

February 13, 2024